JAMES A. VOGEL CO. v. A. WEISKITTEL & SON CO.

(District Court, D. Maryland. February 25, 1915.)

1. PATENTS ☞328—VALIDITY AND INFRINGEMENT—FLUSHING APPARATUS.

The Vogel patent, No. 737,796, for a flushing apparatus for water-closets, designed to be frost-proof, claim 4, *held* valid, but not infringed by an apparatus in which a by-pass is substituted for a ring valve, which is made an essential element of the patented combination.

2. PATENTS ☞328—VALIDITY AND INFRINGEMENT—FLUSHING APPARATUS.

The Vogel patent, No. 801,754, for a flushing apparatus for water-closets, designed to be frost-proof, claim 5, was not anticipated, discloses patentable invention, and is not invalid for prior use; also *held* infringed.

In Equity. Suit by the James A. Vogel Company against the A. Weiskittel & Son Company. On final hearing. Decree for complainant.

Gans & Haman, of Baltimore, Md., and E. Hume Talbert, Thomas A. Connolly, and Joseph B. Connolly, all of Washington, D. C., for plaintiff.

German H. H. Emory, of Baltimore, Md., and Eugene G. Mason and Charles L. Sturtevant, both of Washington, D. C., for defendant.

ROSE, District Judge. The plaintiff owns letters patent No. 737,796, September 1, 1903, and No. 801,754, October 10, 1905, both issued to Joseph A. Vogel. He is the president of the plaintiff. In this case there is no occasion to distinguish between him and it. The word "plaintiff" will be used, whichever is meant. Both patents are for flushing devices for water-closets. In each the purpose is to make a frost-proof apparatus. To attain this end both the supply and the drain pipe, as well as the valve which controls the flow of water from the latter, must be below the frost line. The device must operate automatically. If it does not, some one forgets, and the water freezes. To be commercially practicable, its parts must be few, and its mechanism simple. Its valves must be easily removable for repair or replacement. The apparatus shown in the plaintiff's first patent complies with these conditions fairly well, but that described in the second meets them so much more satisfactorily that the plaintiff has never attempted to put the former on the market. The latter has gone into extensive use. Upwards of 50,000 of them have been sold at a wholesale price of $9.60 apiece. In Baltimore the recent introduction of a complete system of sanitary sewers has led to the installation of many closets in unheated buildings. Under such circumstances the municipal health department requires that the closet shall be frost-proof. In consequence more than 15,000 of plaintiff's devices have been sold in this city. No question is made that both here and in latitudes as far north as Nova Scotia they have worked satisfactorily. The essential difference between the device of his first and of his second patent is that in the former the valve-seat is above the valve which controls the inlet from the water main, and in the second is below it. In each a spring aids in keeping the valve normally closed—in the earlier device by push-

ing it up from below, and in the later by pushing it down from above. Slight as the change now appears to have been, it made possible the omission of a number of parts. It resulted in great simplification of the structure as a whole. When the spring and the valve were below the seat of the latter, it was difficult, and in the form of device described in the first patent impracticable, to lift the valve-rod with the valves and spring upon it out of the pipe into which it was fitted. It was necessary to take the pipe itself out. In order to make it practicable to do that, the plaintiff in his first device provided an outer or jacketing pipe, which remained permanently in the ground, and into which the inner or valve-incasing pipe was removably fitted. In his later device there was no occasion for a jacketing pipe. The valve-rod, carrying all the parts upon which repairs were at all likely to be required, could be taken out without at all disturbing the underground pipe. Earlier inventors, such as Marshall, letters patent No. 382,820, May 15, 1888, and Casler and Hastings, No. 532,530, January 15, 1895, had shown valve connections and antifreezing valves for frost-proof closets which could be similarly removed; but their devices were adapted for use only in direct-flush closets of which a pressure tank formed no part. Plaintiff sought to provide an apparatus which could be adapted to use with an after-flush as well as a direct-flush closet. His problem was thereby additionally complicated. He solved it.

[1] In this case he charges the defendant with infringing only one claim of his first patent, viz., the fourth, which reads as follows:

"In a flushing apparatus, the combination with the bowl, the tank, and a valve-chamber having communication with the bowl and the tank, of a water-pipe, leading to the valve-chamber and formed with drain-ports, a reciprocable valve-rod in the pipe, valves at the respective ends of the valve-rod, a spring to lift the rod with the valves, a ring-valve actuated by the valve-rod to open and close the drain-ports, and a pipe to carry the drain off."

To economize water and to make its full flow available for flushing, it is in all this type of apparatus desirable to close the drain whenever the supply is open. The waste-pipe in plaintiff's first devise opened out of the jacket into which the water flowed from the inner pipe through certain ports. To close these he used the outer circumference of a ring-valve, which, however, permitted the water from the main to pass freely through its open center up the inner pipe to the tank. It is this ring-valve which is made an element of the claim above quoted.

Defendant necessarily provides a means by which water from the main passes by the closed mouth of the drain. It does so, however, by the use of a by-pass, and not a ring-valve. Plaintiff says one is a well-recognized equivalent of the other. For many, doubtless for most, purposes that is so, but not necessarily for the one presently in hand. In plaintiff's earlier device a by-pass would have been more or less inconvenient. A ring-valve suited his turn perfectly. Requiring two pipes, it is desirable that the inner should be of small diameter. A ring-valve probably takes less room than a by-pass. When it can be employed to equal advantage, it is seemingly simpler and more direct in its operation. Moreover, the ring-valve element served as an additional distinction from some of the structures shown in the prior art, as, for example, the device of Casler and Hastings, supra.

I am persuaded that the plaintiff deliberately elected to make a ring-valve, as distinguished from a by-pass, an element of his claim in suit. As that feature is not found in defendant's device, it does not infringe.

[2] The only other claim before the court is the fifth of the patent No. 801,754. At the time application for it was made, the art to which it related was somewhat crowded. It is true there was still room for improvement. Plaintiff doubtless thought he had taken quite a step forward. Nevertheless his solicitor evidently had in mind the expediency of restricting some of his claims to the structure actually shown in the drawings. As a consequence, the claim in suit, being for a combination containing a number of elements, is rather narrow. It reads as follows:

"In a flushing apparatus, the combination of a bowl, a tank, a valve-case communicating with the bowl and tank, a supply-pipe communicating with the valve-casing and provided with an inlet and drain apertures, a rod extending through said pipe and casing and carrying inlet and flushing valves, the latter controlling the flow of water between the supply-pipe and tank and between the tank and bowl, said rod being provided with a by-pass for the flow of entering water between the inlet to the pipe and the valve-casing, a seat-lid, means operated when the seat-lid is depressed to raise the rod to open the inlet-valve and close the flush-valve, and a spring within the valve-casing adapted to force the rod downward to open the flush-valve and close the inlet-valve and normally maintain said parts in such position."

This claim cannot be read on any structure which does not contain a valve-casing communicating with both bowl and tank. Defendant says that in its device the valve-casing does not communicate with the tank. This contention is true only in the sense that in plaintiff's closet the communication between the valve-chamber and the tank is direct, and in the defendant's it is somewhat indirect. For every practical purpose the difference is immaterial. Both operate in precisely the same way to attain the same result. The language of the claim does not necessarily require that the communication shall be direct. In this respect there is no reason why the court should add restrictions which the wording of the claim does not compel. Other details in which defendant says the claim cannot be read upon its device are even more minute and unimportant. It follows that, if the claim is valid, defendant has infringed it.

Is it valid? Defendant's expert says that the first Vogel patent is closer to the claim in suit than is any other prior disclosure. I am not prepared to hold that to make the advances which the combination described in the claim in suit shows over plaintiff's earlier device did not involve invention. The same expert believes, however, that the differences between plaintiff's structure and that of the defendant are more important than to me they seem to be. He says that he regards the device shown in the Healy patent, No. 580,279, April 6, 1897, as the nearest approach to that of the defendant, which may mean that, if the distinctions between defendant's apparatus and that of plaintiff are to be regarded as immaterial, he thinks Healy's is more nearly like the plaintiff's than any other shown in the prior art. Healy has his inlet valve below its seat, and the valve is normally kept closed by the

pressure of the water, assisted by the action of a spring which, while mounted above the valve, operates to pull it upward against its seat. Healy shows a hydrant. His structure has no tank or bowl connections. Such connections had been often made before his day, and they had been very frequently adapted to automatic use, either in a continuous or an after-flush closet. Nevertheless, to adapt his device to serve the purposes of such an apparatus as that described in the claim in suit required various adjustments. They seem simple enough, now that somebody has made them. Any expert can look over the old patents and show how plaintiff's machine could be made by taking one idea from one patent, borrowing another from a second, and adapting still another suggested by a third. The difference between the expert and the inventor seems to be that the former is wise after, the latter before, the event.

Defendant says that, even so, plaintiff's patent is invalid, because the device there shown was anticipated by certain closets in use in Buffalo, N. Y., and in Walla Walla, Wash. In 1901 and 1902 the Zero Valve & Brass Manufacturing Company of Buffalo, hereinafter referred to as the Zero Company, was trying to construct a frost-proof closet. It is highly probable that it came near anticipating plaintiff's invention. It is not satisfactorily established that it did. No specimen of the actual structure it made has been preserved. Drawings and sketches show that the Zero Company was then approaching very close to plaintiff's conception. Some of the closets it constructed were put in actual use. There is some testimony that they gave satisfaction. It is significant, however, that after the experiments had been tried those who managed the Zero Company came to the conclusion that it was not possible to produce a reliable frost-proof closet for latitudes as far north as that of Buffalo. No attempt has been made to contradict plaintiff's evidence that his closets have worked well as far north as Nova Scotia. There must have been some difference between what plaintiff does and what the Zero Company did. That difference seems to measure the distance between failure and success. It is possible that the shortcomings of the Zero Company's closets were due to some purely mechanical defects, which could have been remedied without the exercise of invention. That does not seem very probable, however. The Zero Company appears to have been an experienced manufacturer of such goods and to have skilled mechanics at its command. Moreover, the defendant has not attempted to show the existence of any such remediable defects in the constructions relied on as anticipating plaintiff's device. In my view, anticipation by prior use has not been made out by that clear and convincing testimony requisite to sustain that defense.

It follows that the fifth claim of patent No. 801,754 is valid and is infringed. A decree in accordance with these conclusions may be presented.